JUSTICE LEAPHART
dissenting.
¶25 I dissent.
¶26 The Court has given its stamp of approval to a warrantless seizure without any analysis of the appropriate scope of the seizure. Assuming Officer Grimsrud’s version of the facts, Wetzel, after he was told he could leave, asked to get into the backseat of the patrol car to talk with his wife. Grimsrud was amenable to Wetzel getting in the car so long as Wetzel consented to a search to make sure that he did not have contraband that he could pass to his wife. Officer Rogstad conducted the search and seized a pill bottle found in the pocket of Wetzel’s jacket. Wetzel claimed the pills were Benadryl. Grimsrud did not believe that they were Benadryl so he took the pills to the sheriff s office, called the hospital pharmacy with the pill numbers, and *421 discovered that they were dextroamphetamine, a highly controlled drug.
¶27 Under Montana law, a search of a person must be by authority of a search warrant or in accordance with judicially-recognized exceptions to the warrant requirement. Section 46-5-101, MCA. Here, the Court relies on Wetzel’s consent as the recognized exception to the warrant requirement. I do not quarrel with the conclusion that Wetzel consented to a contraband search. I do quarrel with the scope of the resulting seizure of the pills. A warrantless seizure, no less than a seizure with a warrant, must be “reasonable.” Article II, Section 11, Montana Constitution. Officer Grimsrud testified that it was necessary for him to preserve the integrity of the patrol car-that he could not allow one subject to transfer contraband to another person who is in custody in the car. Accordingly, they “asked [Wetzel] for consent to search him for any contraband before he went in the backseat of that car. And it was explained to him why we were doing that.” It was reasonable for the officers to search Wetzel before allowing him into to the patrol car. Furthermore, the explanation given to Wetzel (i.e., the need to protect the integrity of the patrol car) defined the scope of Wetzel’s consent to any search or seizure.
¶28 ‘When the nature and extent of the detention are minimally intrusive of the individual’s Fourth Amendment interests, the opposing law enforcement interests can support a seizure based on less than probable cause.” United States v. Place (1983), 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110, 118. In this case, neither was the nature and extent of the detention minimally intrusive nor did Officer Grimsrud have any specific articulable facts warranting a reasonable belief that the pills were illegal or providing any reasonable basis for seizing them as contraband. Place, 462 U.S. at 703, 103 S.Ct. at 2642, 77 L.Ed.2d at 118. In order to assure that Wetzel did not pass anything to his wife, all the officers needed to do was empty his pockets of their contents, allow him to visit with his wife, and return the contents to Wetzel when he exited the car. Once the contents of Wetzel’s pockets were in the officers’ possession, there was no further danger of transmittal to the wife and thus no justification for any further snooping. At that juncture, since Wetzel could not pass the pill bottle to his wife, and the bottle was not obvious or apparent “contraband,” there was no basis for seizing the pill bottle to examine the contents.
¶29 Officer Grimsrud testified as follows:
Q: So, you didn’t know what the pills were in the bottle at the time that you seized them at the parking lot?
*422 A: That is correct.
Q: So, you had to wait until later and talk to a pharmacist?
A: That is correct.
Q: So, you didn’t know they were illegal in the parking lot.
A: That is correct.
Q: Why didn’t you just give the pill bottles back to Scott and say
good-bye?
A: Because he didn’t tell us the truth.
¶30 To satisfy the requirement that law enforcement have specific, articulable facts warranting a reasonable belief that the pills were illegal, Place, 462 U.S. at 703, 103 S.Ct. at 2642, 77 L.Ed.2d at 118, the Court relies on the fact that Officer Grimsrud, himself a user of allergy medications, did not believe Wetzel’s claim that the pills were Benadryl. The Benadryl website indicates that there are no fewer than eight different types of Benadryl, including gel capsules, capsules, ‘Ultratabs,”‘Kapsuls,” dissolving tablets, and a topical cream. Pfizer, Benadryl Products for Adults, at http://www.benadrylusa.com/ benadryl/.asp?sec=3&page=40&from=44 (last visited June 8, 2005). There is nothing in the record indicating that Officer Grimsrud was so well versed in pharmacy that he could recognize all eight types. Furthermore, even assuming that Grimsrud was in a position to recognize all types of Benadryl, that merely means that he could conclude that the pills were not Benadryl. Given that there are tens of thousands of legitimate prescription drugs in numbered pills, determining that the pills are not Benadryl is not the equivalent of positively identifying them as contraband. The Court falls victim to Officer Grimsrud’s fallacy of denying the antecedent. The fact that Benadryl is legal, does not imply that pills which are not Benadryl are not legal. Crouse-Hinds Co. v. InterNorth, Inc. (2nd Cir. 1980) 634 F.2d 690, 702-03. (‘The proposition that ‘A implies B’ is not the equivalent of‘non-A implies non-B,’ and neither proposition follows logically from the other.”) (citing J. Cooley, A Primer of Formal Logic 7 (1942)). Since Officer Grimsrud concedes that he had no specific and articulable facts warranting a reasonable suspicion of contraband, he could have achieved the governmental interest (integrity of the patrol car) with “minimal intrusion” on Wetzel’s Fourth Amendment interests by simply having Wetzel remove his jacket before entering the car or temporarily seizing and holding the contents of his pockets while he was in the car and returning the contents upon his exit. See Place, 462 U.S. at 709-10, 462 S.Ct. at 2645-46, 77 L.Ed.2d at 122-23 (holding that a ninety-minute detention of luggage without informing defendant of *423 the place to which they were transporting the luggage, what the length of time he might be dispossessed of it, and what arrangements would be made for return of the luggage if the investigation dispelled the suspicion, was unreasonable).
¶31 In the present case, it was constitutionally reasonable for the officers to search Wetzel, temporarily hold the contents of his pockets while he visited with his wife in the patrol car, and then return the contents, including the unopened and ostensibly legal pill bottle to Wetzel. Given that the officers did not know the pills were illegal, it was entirely unreasonable for them to seize and indefinitely hold the pill bottle once Wetzel had exited the car and presented no more risk of transmittal. Under the Court’s rationale (unrestricted seizure of property, irrespective of whether it can be passed on to his wife) it would have been equally permissible (and thus equally appalling) for the officers to seize Wetzel’s jacket and wallet and take them to the sheriff s office so that the officers could rip open the lining of the jacket and rummage through the wallet looking for drugs or evidence of contraband. This unwarranted and unjustified ‘fishing expedition,” FTC v. Am. Tobacco Co. (1924), 264 U.S. 298, 306, 44 S.Ct. 336, 337, 68 L.Ed. 696, 701, violated Wetzel’s rights of privacy and freedom from unreasonable searches and seizures under Article II, Sections 10 and 11 of the Montana Constitution.
¶32 I would reverse the District Court’s denial of the motion to suppress the evidence.